FEDERAL PAPER BOARD CO., INC., PETITIONER-APPEL-
LANT, v. BOROUGH OF BOGOTA, RESPONDENT-RE-
SPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 21, 1974—Remanded March 26, 1974—
Decided July 15, 1974.

Before Judges COLLESTER, LYNCH and MICHELS.

*Mr. Martin T. Durkin* argued for appellant (*Messrs. Durkin & Foerst,* attorneys).

*Mr. Thomas A. Tinghino* argued for respondent.

The opinion of the court was delivered by

LYNCH, J. A. D. Appellant-taxpayer appeals from a decision of the Division of Tax Appeals (Division) which sustained the tax rate on tangible business personalty in Bogota as fixed by the Bergen County Tax Board at $13.64 for the

tax year 1965. Appellant contends that the county board erred in arriving at the tax rate because it used as a base for calculation thereof the value of the total *assessments* of business personalty for the tax year 1963, in applying the statutory formula mandated by *L.* 1964, *c.* 141 (*N. J. S. A.* 54:4–9 *et seq.*), rather than adjusting said value in accordance with *reductions thereon later obtained on appeal and resulting in less taxes "collected."* It is taxpayer's contention that if such reductions had been recognized, and applied in the calculation, that rate would be $5.95 and would result in a tax bill to taxpayer in the amount of $31,315, rather than the $71,789 which was billed in applying the $13.64 rate.

The problem presented requires interpretation of the interim legislation contained in *L.* 1964, *c.* 141, which established the method of calculating the tax rate to be applied on tangible business property for the tax years 1965 and 1966. Here we are concerned with that for the year 1965. Section 2 of the statute provided:

> The adjusted personalty tax rate for each taxing district shall be determined as follows by the respective county boards of taxation:
>
> a. First, for the tax year 1965, for each taxing district there shall be derived a fraction in which 1963 business personal property taxes in the district are the numerator and in which all 1963 property taxes in the district, real and personal, are the denominator. Second, the fraction so determined in each district shall be multiplied by the total property tax levy in the district for the tax year 1965. Third, the dollar figure so determined shall be divided by the 1965 total taxable value of business personal property in the district and the resulting dollar figure shall be the 1965 adjusted personalty tax rate expressed in mills per dollar of assessed value; * * *.

Thus, the statutory formula here included, among other considerations, the factor of the 1963 business personalty property taxes and the 1963 taxes on all property, real and personal, in a tax district. Also, section 7 of the 1964 act prescribed a report by the Director of the Division of Taxation (Director). Section 7 read:

The Director of the Division of Taxation shall compile and publish and distribute a report, in such form and detail as he shall prescribe, indicating real and personal property taxes levied *and collected* throughout all taxing districts for the tax year 1963 and each year thereafter which shall be used by county boards of taxation and other officials in determining and reviewing adjusted personalty tax rates. [Emphasis added]

The emphasis is ours, but the language emphasized creates the issue as argued by taxpayer.

In his report dated December 16, 1964 the Director indicated that the business personal property taxes in Bogota for 1963 totaled $251,616. Taxpayer contends that the 1963 personal property tax actually *collected* by Bogota was only $123,831.29. This lower figure of such taxes actually *collected* resulted because other large Bogota taxpayers, Brewster & Son, Inc. and Brewster Equipment Co., after appeal, had obtained reductions in their business personalty assessments for the year 1963 in the amount of $1,695,000. Since the total of such assessments in Bogota had amounted to $3,730,331, the reductions obtained by the Brewster Companies reduced the business personalty assessments by almost 45%, and resulted in the consequent reduction in the amount of business personal property taxes *actually collected*.

Taxpayer's argument is based upon the wording of section 7 to the effect that the report of the Director of the Division of Taxation must indicate real and personal property taxes "levied and *collected*" (emphasis ours) in a taxing district for the year 1963; that the phrase means that the report shall indicate the actual taxes *collected* for that tax year rather than those merely levied. It is contended that the Director's report of December 16, 1964 was in error in that it did not indicate the taxes which had been *collected* for the tax year 1963, but rather the taxes which were levied based upon the original assessments in Bogota for that year.

The Division rejected taxpayer's contention, and held that a reasonable construction of the relevant statute required that the Director would have to use a formula that could ap-

ply to every tax district in the State, and this could only be done if he were to report on the amount of taxes levied and to assume that they were collected, or were collectible. It followed, said the Division, that the county board, in accepting the Director's table in its fixing of the tax rate, would likewise have to construe the statute in that fashion.

After oral argument herein we remanded the matter to the Division, essentially for findings of fact as to when, and by what method, the settlements with the Brewster companies were effected. The purpose of the remand was to attempt to throw some light on the practical problems confronting the Director of Taxation in preparing his report as provided in *N. J. S. A.* 54:4–9(d), and the county board in fixing the rate. We had in mind the possibility, for example, that such reductions had not been effected by the time the Director compiled his report and, indeed, by the time the county tax board fixed the tax rate for the year 1965, and thus it would not know what taxes had been actually collected. After remand the Division found that there was no written evidence of a judgment or stipulation being filed with either the Bergen County Board of Taxation or the Division of Tax Appeals.[1] A search of the records in both tribunals failed to produce conclusive proof as to when, or how, the Brewster reductions were effected. It was determined, however, that, pursuant to *N. J. S. A.* 54:4–49, in the year 1969 the Town of Bogota received a credit totaling $14,334.62 on account of county taxes because of the reduction in the assessments of Bogota's personal property for the year 1963. This was the extent of recoupment for the 1963 reductions which the statutory scheme provides. In conclusion, the Division found that no judgment was ever rendered with respect to the Brewster assessments and, as late as 1968, the record on those appeals was still open on the Bergen County Tax Board files. The Division concluded its findings by saying that: "In view

---

[1] A procedure which we do not approve.

of the above facts it is obvious that the County Board had no knowledge of the Brewster Co. and Bogota maneuvering [*sic*] at the time it was preparing to set the tax rate for personal property in the subject year." There was substantial credible evidence to support that finding and we accept it. *State v. Johnson,* 42 *N. J.* 146 (1964).

██ Statutes must be read sensibly and all rules of construction are subordinate to the proposition that a statute will not be construed to lead to absurd or anomalous results. *Marranca v. Harbo,* 41 *N. J.* 569, 574 (1964). See also, *State v. Gill,* 47 *N. J.* 441 (1966). Every effort should be made to avoid such results. *Union Co. Bd. of Freeholders v. Union Co. Park Comm'n,* 41 *N. J.* 333 (1964). Even specific language may be avoided to escape a result it would be inconceivable to think the Legislature intended. *Sandler v. Springfield Tp. Bd. of Adjustment,* 113 *N. J. Super.* 333, 345 (App. Div. 1971).

█ The findings of fact by the Division serve only to demonstrate that the taxpayer's argument, *i. e.,* that only the taxes actually "collected" for the tax year 1963 are to be considered in calculating the tax rate under *L.* 1964, *c.* 141, would lead to an unreasonable construction of the act, productive, indeed, of absurd results.

If the statute were so construed at the time the county board calculated the tax rate, namely, on or before April 10, 1965, it could not have known what taxes had actually been collected or would be collected for the tax year 1963. No part of the statutory scheme imputes such knowledge to the county tax board except, as taxpayer argues, the report of the Director of Taxation pursuant to *N. J. S. A.* 54:4–9(d). But neither could he have known such information at the time he prepared his report. The court takes notice of the fact that tax appeals in the Division, and through appeals to the courts, have taken many years, and it is not until the the conclusion of such litigation that the amount of taxes actually "collected" for a particular tax year can be

ascertained. We cannot impute to the Legislature an intent to require the Director, in compiling his report, to do what it was impossible for him to do, *i. e.*, determine the amount of taxes actually collected for a particular tax year.

■ We further determine that *N. J. S. A.* 54:4–9(d) directs that the Director's report shall be used only as one of the "tools" to be used by the county tax board in determining adjusted personalty tax rates. The *operative* portions of the statute in the fixing of the rate are contained in *N. J. S. A.* 54:4–9(a) and (b). In subsection (a) the reference is not to taxes "levied and collected" for 1963. but rather "business personal property taxes" and "all 1963 property taxes in the district, real and personal." Further, the fraction to be used is to be multiplied by the "total property tax *levy.*" (Emphasis added). Finally, the dollar figure so determined is to be divided by the 1965 total "tax appeal value of business personal property."

One contemplates how often, after a particular tax year, the amount of taxes actually *collected* for that year changes by reason of subsequent judgments on appeals. Again reason dictates that the taxpayer's construction of the statute leads to absurd results. It must be apparent that with each change in dollars collected the application of the formula provided in *N. J. S. A.* 54:4–9(a) would result in different rates as reductions on appeal were granted. Indeed different rates would be applied as against different taxpayers — those who had paid taxes before the particular reductions and those after such results were reached. Surely such a construction of the statute is, to say the least, unreasonable — we think, absurd. We cannot, and do not, so construe it.

■ Taxpayer also contends that the calculation of the tax rate adopted by the county board of taxation is "unconstitutional." We find no merit whatever in the contention.

The judgment of the Division of Tax Appeals is affirmed.